Miller v. Edgerton.

---

MARY V. MILLER v. MARY E. EDGERTON, *et al.*

1. PAROL AGREEMENT — *Inadmissible Evidence.* Proof of a contemporaneous parol agreement is inadmissible to alter or contradict a contract in writing.

2. DEED, *Not Defeated by Parol Evidence.* The consideration of a deed may be shown to be different from that expressed on its face, by parol evidence, but it cannot be admitted for the purpose of varying or defeating the conveyance itself.

3. Two CONTRACTS, *Construed Together.* Where a contract is made in writing between two parties, and reference is made therein to another contract also in writing between the same parties, as a part of the consideration of the contract then being executed, both instruments constitute the agreement of the parties, and should be construed together.

*Error from Cherokee District Court.*

THE opinion states the nature of the action, and the facts. Trial at the April Term, 1886, and judgment for the plaintiffs. The defendant *Miller* brings the case to this court.

*W. R. Cowley*, for plaintiff in error.

*Fred Basom*, and *W. H. Phelps*, for defendants in error.

Opinion by HOLT, C.: This action was tried by a jury, in the Cherokee district court, at the April term, 1885. There was a verdict in favor of plaintiffs below, defendants in error, for $5,000. The court overruled a motion for a new trial, upon the condition that the plaintiffs would remit all of the

verdict in excess of the sum of $1,187.41; plaintiffs consenting, a judgment was rendered for such amount.

This action was based upon the following alleged facts: John N. Miller died, in Cherokee county, Kansas, in August, 1882, leaving as his heirs his widow, Mary V. Miller, defendant, and Mary E. Edgerton, his adopted daughter, one of the plaintiffs. The day before his death he attempted to make his will, but before it was completed he was taken with a chill, and never signed it. He left property to the value of between $10,000 and $20,000. By the terms of his proposed and partially-completed will, he left $300 to his adopted daughter; $1,000 in money, and his homestead, and all his personal property excepting his moneys and credits, to his wife; also small bequests to other relatives and friends. In that part of the will, the last he was able to dictate, he left all the residue of his property to his wife. At the time of his death, his adopted daughter was about to be delivered of a child; and about the first of September following the widow went to her home, carrying with her the paper partially prepared as the will of John N. Miller, and on the back thereof she had written an instrument which she wished her and her husband to sign. She told Mrs. Edgerton at that time that it had been the earnest and long-cherished desire of her husband to aid poor and deserving children in obtaining an education. Mrs. Edgerton was probably well acquainted with her father's intentions in this direction before this time. Mrs. Miller stated to her his efforts in making the will, and said she had drawn up a contract on the back of the proposed will, and wished her to sign it, so that his wishes might be fulfilled. At this time Mrs. Edgerton was in bed with a babe a few days old, and after a little conversation Mrs. Miller left the papers with Mrs. Edgerton in order that she might talk the matter over with her husband, and went away, returning the next day, when the papers were handed back to her, unsigned. Nothing was said on that day about signing the contract. Some ten days after, she again went to see Mr. and Mrs. Edgerton, and after some conversation the contract on the back of the will

was signed by Mrs. Miller, Mrs. Edgerton, and her husband. A few days after this, and after Mrs. Miller had consulted with her attorney, she went again to Mrs. Edgerton to get a new contract in regard to the estate of John N. Miller. After considerable discussion a contract, or indenture as it was called, was made, by which Mr. and Mrs. Edgerton sold and conveyed all their right and interest in the estate of John N. Miller to Mary V. Miller, the consideration expressed in the contract being $1,321, and "other considerations hereinafter mentioned." At that time Mrs. Miller paid Mrs. Edgerton $100, and very shortly thereafter $400 more, and in addition gave her note for $500, which was paid the year following; she also delivered up a note amounting to $321, which John N. Miller had held against her in his lifetime. Afterward this action was brought by the Edgertons against Mary V. Miller, they claiming that they were entitled to one-half the estate of John N. Miller, and saying that at the time of the last above-named contract between themselves and Mary V. Miller, there was a contemporaneous oral agreement, which provided that as rapidly as the estate of Mr. Miller was reduced to money and collected by Mary V. Miller, one-half of the net proceeds were to be turned over to them.

The case was tried upon the theory that there was a contemporaneous oral agreement made at the time of the contract between Mrs. Miller and the Edgertons in regard to the disposition of the proceeds of the estate. The plaintiff in error complains of several of the rulings of the court, but we shall consider but one question in reviewing the case, and that is, whether it was error to admit proof of the contemporaneous oral agreement alleged by the plaintiffs.

It is contended by the defendant that such parol agreement did not explain or in any manner tend to facilitate the performance of the contract in writing between these parties. She claims that the subject-matter sought to be controlled by the parol agreement was embraced in their written contract, and insists that the well-known rule that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a

valid written instrument, is applicable. That rule must govern

1. Parol agreement—inadmissible evidence. our decision, unless the evidence brings it within one of the exceptions to it. The plaintiffs say, however, that the parol agreement is concerning the consideration nominated in the written contract, and can be fully inquired into; and cite a long list of authorities to show that the consideration expressed in a deed is not conclusive between the parties, and that proof may be given to show a state of facts different from that expressed, although it may vary, enlarge, or even contradict in that respect the written contract. We shall refer only to those authorities that apparently most strongly tend to support the claim of the plaintiffs.

In *Hannan v. Oxley*, 23 Wis. 519, the action was for partition of land, in which two daughters claimed the land as heirs-at-law of their father, and the widow as defendant claimed the entire estate by virtue of a deed from her husband to herself; the consideration named in the deed was $600, but in the trial the defendant was permitted to show, after the money consideration expressed in the deed had been attacked, that there was the further consideration of love and affection named as a consideration at the time of executing the deed, but not expressed therein. It was contended because the deed recited no such consideration, that it could not be proven.

Mr. Justice Paine, speaking for the court and citing authorities, says:

" I shall not attempt to review the authorities upon the subject, but refer to the following as showing that the recitals in a deed are not conclusive between the parties as to the consideration or its payment, but that, in a case like this at least, where there is no question as to the rights of creditors, parol evidence may be introduced to show an additional consideration to that expressed and consistent with it, for the purpose of sustaining a deed."

It will be noticed that the evidence was admitted to show a consideration consistent with the one expressed, and for the purpose of sustaining a deed. It is obvious that the rule

therein enunciated is not applicable to the facts proven in this action.

In the case of *Laudman v. Ingram*, 49 Mo. 212, it was attempted to show by parol that in addition to the consideration expressed in the deed, there was a further agreement that the grantee was to pay the taxes on the land. In the opinion of the court, delivered by Mr. Justice Adams, it is said:

"We know the general rule to be that all stipulations and declarations anterior to and contemporaneous with a written agreement are merged in the writing, and cannot be proved by parol. But the exception, if it be an exception, is equally as well established, that one may by parol evidence prove additional considerations not inconsistent with those recited in a deed."

In the case of *Morris v. Tillson*, 81 Ill. 607, the question arose whether a consideration expressed in a lease for rent of three years in advance, did not include a debt already due. Although it was expressed on the face for rent to become due, it was there held that the recital of payment of the consideration in a lease might be contradicted, provided it is not sought by the evidence offered to impair the lease, or vary its legal effect.

In the celebrated case of *McCrea v. Purmort*, 16 Wend. 460, the question was whether, when the consideration expressed in the face of the deed was acknowledged to have been paid in money, it could be proved by parol that it was in fact paid in a different manner; it was held it could be shown, and the authorities upon the question were collated and reviewed. Among other authorities cited was *Morse v. Shattuck*, 4 N. H. 229, and the language in that opinion is copied with approval. Mr. Chief Justice Richardson says in this connection:

"It is perfectly well settled that a consideration expressed in a deed cannot be disproved for the purpose of defeating the conveyance, unless it be upon the ground of fraud."

The case of *Rhine v. Ellen*, 36 Cal. 362, was an action for the purchase-money for the sale of a mine. The mine was sold to several parties for $32,000. In the petition it was averred that the defendant Ellen bought one-eighth part, and

was to pay therefor $4,000, and that instead of the consideration being jointly due from all the grantees, each one was to pay his proportionate share. The defendant denied the consideration to be as alleged by plaintiff, but said that, if after one year he should elect to take the share, then he was to pay for it, but if he declined to take it, then plaintiff was to pay him for all moneys expended by him in organizing a stock company to operate the mine, and all assessments and expenses paid for improving it. The distinction between that action and this one is best shown, perhaps, by quoting a portion of the opinion :

"The action is not brought upon any express covenant or promise found in the instrument. The promise is implied by law from facts shown *dehors* the instrument and contrary to its express acknowledgment. . . . In fact, the suit is not upon the conveyance at all. The whole agreement relied on for the recovery is outside of the conveyance, and that instrument is not offered as the contract sued on, but it is offered for a collateral purpose, as an item of evidence, to show a performance on his part. . . . The words of conveyance of land are the operative words of the contract, and constitute the contract itself. But the acknowledgment of payment of the consideration and of its amount are but the acknowledgment of the existence of facts. The former cannot be contradicted, but the latter may be shown to be otherwise than as acknowledged."

We have examined the authorities carefully, and stated them at considerable length, to show that they do not sustain the theory contended for by plaintiffs. The evidence offered of a parol contract in this action not only tends to change radically the consideration of the indenture, which would probably be permissible, but it defeats and destroys the written contract itself. This action was brought to recover money had and received out of the estate of John N. Miller, deceased, and appropriated wrongfully to defendant's own use. In their petition plaintiffs claimed that the "pretended deed" was obtained from them by deception, misrepresentation, and fraud; the charge of fraud was, however, abandoned at the trial of this action.

2. Deed, not defeated by parol evidence.

Of course if *that* had been established, an action could have been sustained; it was tried on the theory that plaintiffs were entitled to one-half of the value of the estate under a parol contract. If there had been no contract or conveyance, that would have been Mary E. Edgerton's share in the estate, as one of the heirs of John N. Miller. It is not disputed that there was a contract entered into between the parties about the estate after Miller's death; the defendant claims that it was all·expressed in writing; the plaintiffs say and.introduced evidence and tried the action on the theory that there was a contemporaneous parol contract about the consideration, different from that expressed in the deed. Let us examine the part of the deed relating to its consideration. First, it provides:

"That the said Mary E. Edgerton and William Edgerton, her husband, for and in consideration of the sum of thirteen hundred and twenty-one dollars, to them duly paid by Mary V. Miller, and other considerations hereinafter mentioned, do by these presents sell," etc.

The other considerations are further set forth in the deed as follows:

"It is further agreed and understood, that said Mary V. Miller agrees and promises to settle the estate of said John N. Miller, deceased, and apply the proceeds thereof in accordance with the terms and stipulations of a certain instrument drawn by direction of the said John N. Miller in his lifetime, dated August 15, 1882, and intended by him as his last will and testament, but not signed by him; and the said promise and agreement of said Mary V. Miller to so settle and apply the proceeds of said estate as directed in said will, and the contract of the parties hereto indorsed on said will, forms a part of the consideration for this conveyance."

The parts of the will that are applicable are as follows:

"I give, devise and bequeath unto my beloved wife, Mary V· Miller, the homestead property where I now live, in Baxter Springs, Kansas; also, my household property of every description, and all my other personal property excepting my moneys and credits, and also one thousand dollars in money, to be paid her by my executors hereinafter named, to have and to hold the same to her and her executors and administrators and assigns forever.

"I give and bequeath to my adopted daughter, Mary E. Edgerton, three hundred dollars at my wife's decease, unless she shall choose to pay it sooner.

"I give and bequeath to my beloved wife, Mary V. Miller, all the residue of my personal property, for her use and benefit so long as she shall remain my widow.

"And lastly — I do nominate and appoint my said wife, Mary V. Miller, to be my executrix of this, my last will and testament."

The contract indorsed on the same was as follows:

"Know all men by these presents: That we, Mary V. Miller, Mary E. Edgerton, and William Edgerton, the sole heirs of or to the estate of John N. Miller, deceased, do here enter into a solemn agreement that his, the said John N. Miller's last will and testament as dictated by him and not signed, as appears in the above and foregoing instrument, be carried into effect as nearly as possible according to his expressed provisions; and further, that after his funeral expenses and just debts are paid, and the several donations that are made by said will are paid out, that the income of his estate, except that which is needed for the maintenance of his widow, shall be used for charitable purposes, mostly the education of poor children; it being the fervent desire that the aim and ambition of his very busy life be now answered, that the income of his estate be used to relieve suffering and to assist in educating those who cannot educate themselves."

We suppose it will be conceded that the instrument intended as the last will of John N. Miller, and the contract indorsed thereon, are a part of this contract or conveyance. They all constitute but one contract. They were evidently treated as such by the parties, and the unfinished will and the contract indorsed thereon are as much a part of this contract signed upon the 14th day of September, 1882, as though they had been written out in full and embodied in its face.

3. Two contracts, construed together.

It has been said that the doors have been thrown open wide when the consideration of a deed is to be inquired about, and that oral evidence is admissible to show its actual consideration, but in the absence of fraud, accident, and mistake, it has this limitation at least: such evidence is not competent

when it alters and defeats the deed itself. In that case all contemporaneous stipulations and agreements are merged in the written instrument, and cannot be established by parol evidence. The oral evidence admitted on the trial, in effect would change this instrument from a deed which it purports to be, into an agreement whereby the defendant is bound to reduce the estate to money and give the plaintiff one-half of the proceeds, without compensation for services in so doing. This indenture not only conveyed all the interest the plaintiffs had in the estate of John N. Miller to defendant, but it was in addition thereto a contract which provides for the application of its proceeds. The very consideration of the conveyance mentioned on its face, is a written contract of the parties. It stipulates that the income of the estate shall be used to relieve suffering and assist in educating those who cannot educate themselves. The plaintiffs claim by virtue of a parol agreement that one-half of the estate is to be paid to them as a consideration for their deed to defendant. They ask that it shall defeat and destroy their written contract made at the same time. This ought not to be allowed. Their pretext for this is, that it is a part of the consideration of a deed, and therefore it can be contradicted. Their reason assigned is not sound. The consideration of a deed may be contradicted in certain cases, to be sure; but this contract, although a part of the consideration, still retains its nature, and should be governed by the ordinary rules relating to contracts in writing. It follows that the evidence admitted to establish a contemporaneous parol agreement was incompetent; it was error to admit it.

We recommend that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.