EARL C. JORDON *et al., Appellants,* V. JANE CLARK
*et al., Appellees.*

No. 17,454.

SYLLABUS BY THE COURT.

POSTNUPTIAL AGREEMENT—*Different Writings—A Single Trans-
action.*    The general rule is that different writings, made
by the same parties, at the same time, relating to the
same subject matter, in the course of the same transaction,
and which refer to each other, should be read together and
construed as a single contract, and, hence, a postnuptial
agreement and two warranty deeds executed by parties under
such circumstances are deemed to be parts of a single trans-
action, and so taken together and interpreted they show the
intention of each party to exclude the other from the right
of inheritance in the land conveyed.

Appeal from Washington district court.    Opinion
filed February 10, 1912.    Reversed.

*Edgar Bennett,* and *J. W. Rector,* for the appellants.
*A. J. Freeborn,* and *Charles Smith,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to de-
termine the ownership of a tract of land in Washing-
ton county and to partition it among the several
owners.

A quarter section of land had been acquired by Calvin and Jane Clark while living together as husband and wife. The legal title stood in Calvin Clark's name but the wife had contributed toward the purchase and improvements. After living in the marriage relation for a good many years they decided, and presumably for good reasons, that they could no longer live together, and on March 19, 1885, they joined in executing a separation agreement which provided for a division of the property acquired and owned by both, reciting that it was done:

"In contemplation of an immediate and final separation between them, and of the future living apart the one from the other, and the termination of all marital relations and intercourse between them, as follows, to-wit: said husband, Calvin Clark, is to have and take in his own name and right and as his own to use or dispose of as he may see fit, out of their common household personal property, (describing it). And he is to have the sole and exclusive right to possess, control, let, lease, use, enjoy and own the certain eighty acres of land, being a part of their family farm and homestead, (describing it) and all of the rents and proceeds thereof, free from all claims or interference of any kind on the part of his said wife, Jane Clark, now or hereafter, and she hereby releases him and his said property of every kind now owned or to be hereafter acquired by him from any and all claims upon him or it for support or otherwise.

"And said Jane Clark for her share of their common property is to have and take, hold, own, use and enjoy free from all claims or interference on part of said Calvin Clark, all of their family goods, except as above provided, also (certain specific personal property, describing it) and all property of every kind which she may hereafter own or acquire, and said Calvin Clark releases her and all of said property above described, and also the 80 acres of land (describing it) and all buildings and improvements thereon, from all claims, control or interference on his part now or hereafter, for support or otherwise, and he agrees to immediately quit and leave and remain away from said N. ½ of said Quarter of land, the same having been by him

conveyed to her this day, and she having this day conveyed said S. ½ of said Quarter of said land to him."

On the day the agreement was made each party executed to the other warranty deeds referred to in the separation agreement, which contained the usual clauses barring the grantor, his or her heirs and assigns, from any claim or inheritance in the land conveyed. Calvin Clark died intestate on October 7, 1901, and there was no administration of his estate. Earl C. Jordon and Floyd W. Jordon, sons of a deceased daughter of Calvin Clark by his first wife, brought this action, alleging that he died seized of the entire quarter section and asking for their respective shares out of it. Jane Clark, the widow, answered claiming that she was the absolute owner of the eighty acres conveyed to her at the time of the separation, and, also, that she inherited one-half of the other eighty which she had conveyed to him in pursuance of the separation agreement. Her claim was sustained by the trial court and the partition of the land was accordingly made.

The validity of the postnuptial agreement is not contested but there is a controversy as to its proper interpretation. Was it the intention of the parties to release to the other his or her right of inheritance as the survivor of the other, or, rather, did the agreement which they made operate to exclude the wife from a right of inheritance on the death of her husband? The agreement, apart from the deeds executed at the same time, did not, in express terms, pass title to the "heirs and assigns." It did, however, purport to give him the sole and exclusive right to own and enjoy the land free from any claims or interference on the part of his wife "now or HEREAFTER" and it also stipulated that she thereby released him and his property "from any and all claims upon him or it for support or OTHERWISE." The contention is that the stipulation that she should have no claim upon the property of her husband "hereafter" is an effective release of

the right to inherit after his death. This, it is said, is made clearer by the recital that the release is from claims for support or "otherwise," and the term "otherwise," they insist, means a release from every other claim or right, which, of course, would exclude the right of inheritance.

Appellants plausibly argue that under the theory of appellees these words of release and exclusion are rendered nugatory, while the rule is that, in determining the intention of the makers of a contract and in interpreting it, all parts thereof shall be considered, and, if possible, effect shall be given to each word used by the parties to express their purpose. There is a chance for a debate as to whether the terms used indicate a purpose to exclude the right of inheritance, but when taken in connection with the deeds referred to in the agreement, and which were executed at the same time, all doubts disappear. These instruments expressly contained the usual terms which bar the right of inheritance. They were contemporaneous with the agreement, are specifically referred to in it, relate to the same subject matter, and are the appropriate means of effecting the manifest purpose of the contracting parties. The reference to the deeds in the contract is internal evidence that the three writings constitute an entirety and should be regarded as a single contract. In *King v. Mollohan,* 61 Kan. 683, 60 Pac. 731, which involves a postnuptial agreement, four instruments of writing, composed of two relinquishments and two trust deeds, all made at the same time, were treated as parts of the same transaction. The presumption is that different writings made by the same parties, on the same day, relating to the same subject matter, and in the course of the same transaction, should be read together and construed as a single contract. Especially should they be regarded as parts of one transaction where, as here, they refer to each other. (*Miller v. Edgerton,* 38 Kan. 36, 15 Pac. 894; *Ritchie v. K. N. & D. Rly. Co.,* 55 Kan.

36, 39 Pac. 718; *Salt Co. v. Barber*, 58 Kan. 419, 49 Pac. 524; *Jack v. Hooker*, 71 Kan. 652, 81 Pac. 203; *Kurt v. Lanyon*, 72 Kan. 60, 82 Pac. 459.)

So construed, the agreement between Calvin and Jane Clark was manifestly intended as a renunciation of any claims or interest of each as the survivor of the other, and it effectually excluded Jane Clark from any right of inheritance in the land conveyed to Calvin Clark.

The judgment is, therefore, reversed and the cause remanded with the directions to the trial court to enter judgment partitioning the land involved here on the basis that Jane Clark did not, upon her husband's death, inherit any interest in his real estate.