No. 26,571.

C. R. SPAULDING, *Appellant,* v. C. E. DAGUE, KATIE DAGUE and
JOHN CRIST, *Appellees.*

#### SYLLABUS BY THE COURT.

1. FRAUDS, STATUTE OF—*Real Property—Rule Applicable to Both Parties.* Our
statute (R. S. 33-106), which provides that no action shall be brought upon
any contract for the sale of land unless the agreement, or some memoran-
dum or note thereof, shall be in writing signed by the party to be charged,
or by some person by him or her lawfully authorized in writing, applies to
a defendant who seeks to enforce a contract for the sale of land, the same
as it does to a plaintiff.

2. VENDOR AND PURCHASER—*Remedies of Vendor—Agreement to Reconvey.*
When one conveys land for a valuable consideration and contends that he
was induced to execute the conveyance because of an agreement made by
the grantee to reconvey on certain terms, he must either disaffirm the con-
veyance and seek to set it aside for fraud or some other sufficient reason,
or affirm the conveyance and rely upon the agreement to reconvey.

Appeal from Scott district court; ROSCOE H. WILSON, judge. Opinion filed
March 6, 1926. Reversed.

*C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the ap-
pellant.

*R. D. Armstrong* and *D. B. Lang,* both of Scott City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action in ejectment. It was tried to a jury,
which, by stipulation of the parties, answered special questions
only, upon which the court rendered judgment for defendants. The
plaintiff has appealed.

Plaintiff averred that she has the legal title and estate in and to
the real property, which was described; that defendants unlawfully
kept plaintiff out of possession, to plaintiff's damage, in a sum named.
C. E. Dague and John Crist were named defendants. Katie Dague,
wife of C. E. Dague, by leave of court, intervened as a defendant
and answered, alleging that she was the owner in fee simple of the
real property in question and in possession thereof by her tenant.
John Crist answered that he was in possession of the real property
as tenant of Katie Dague, and averred that his possession was law-

Appeal and Error, 4 C. J. p. 701 n. 49. Ejectment, 19 C. J. p. 1084 n. 78.
Fraud, 26 C. J. pp. 1090 n. 62, 1094 n. 99. Frauds, Statute of, 27 C. J. p. 306 n.
57. Trusts, 39 Cyc. p. 179 n. 54; 35 A. L. R. 280; 26 R. C. L. 1197. Vendor and
Purchaser, 39 Cyc. pp. 1303 n. 20, 1888 n. 84.

ful. C. E. Dague's answer was a general denial and an allegation that John Crist was lawfully in possession as tenant of Katie Dague.

Upon the trial plaintiff relied upon a general warranty deed to the land in controversy, dated August 25, 1923, executed by Katie Dague and C. E. Dague to plaintiff, reciting a consideration of $8,000, in which the grantee assumed and agreed to pay a mortgage of $3,500 on the land, and in which the grantors reserved the crops then on the land and the possession of the land until March 1, 1924. The defendants at the beginning of the trial admitted execution and delivery of the deed, and the receipt of the consideration; and assumed the burden of proof. Katie Dague, the principal defendant, relied upon an oral agreement, made at the time the deed was executed and delivered, by which plaintiff agreed to reconvey the land to her, clear of encumbrances, upon the payment of $5,000, which had been tendered and refused.

The circumstances out of which the controversy arose are in substance as follows: C. E. Dague had known for many years, and from time to time had borrowed money upon his personal notes from plaintiff's father, M. B. Gilbert, the notes being payable to plaintiff, and on February 23, 1922, renewed a note for $5,209.95. The title to the land in controversy stood in the name of Katie Dague; the land was mortgaged for $3,500. In August, 1923, Mr. Gilbert talked with C. E. Dague about buying the land. Mr. Dague priced it at $8,000. Mr. Gilbert offered to buy it at that price and pay for it by assuming the mortgage of $3,500 on the land and giving Mr. Dague a credit of $4,500 upon his personal note. Mr. Dague agreed to sell, for that price and terms, if it was satisfactory to his wife. He thought it was a good price for the land and was glad to be able to sell it for that sum. He went to see his wife about it and took her to the office of L. C. Baker, an abstracter and insurance man, where they met Mr. Gilbert by appointment. Mr. Dague gave the data and instructions to Mr. Baker, who prepared the deed. Mrs. Dague testified as to what took place at Mr. Baker's office, in part, as follows:

"When I arrived at the office Mr. Gilbert and Mr. Baker were there. I went into the office, and went back toward the back room. I was crying. Mr. Gilbert came over to me and said: 'You hate to give it up,' and I said, 'Yes, for that much,' and he said, 'I will deed it back to you clear for $5,000.' I waited a few minutes and studied, and finally went over and signed the deed."

She further testified that she read the deed, or part of it, before

signing it; that before going to Mr. Baker's office her husband had told her about the deal to sell the land, the price to be received and the manner in which it was to be paid; that she went to the office because her husband wanted her to do so, and thought she might sign the deed, but had not fully made up her mind to that effect; that she "would not have signed the deed under any circumstances if Mr. Gilbert had not told me he would let me have the land back for $5,000"; that she believed Mr. Gilbert and relied upon his "promise to reconvey it for $5,000."

At the time of executing the deed Mr. Gilbert produced the $5,209.95 note above mentioned and had Mr. Baker indorse thereon a credit of $4,500.

In January, 1924, C. E. Dague found a buyer for the land for $7,200. He went to Mr. Gilbert and wanted a reconveyance. Mr. Gilbert had plaintiff execute a deed to C. E. Dague, reciting a consideration of one dollar and other valuable considerations, and providing that the grantee assumed and agreed to pay the mortgage of $3,500 on the land. In the meantime Gilbert had paid an interest coupon on the first mortgage of $105. Mr. Dague asked that this deed be delivered upon the payment of $1,500, plus $105, which Mr. Gilbert declined to do. The Dagues declined to deliver possession March 1, 1924, as their deed to plaintiff provided. Hence this action.

The defendants do not contend the deed to plaintiff was given in the nature of a mortgage and as security for the debt represented by the note of C. E. Dague to plaintiff, but it is specifically contended the land was owned by Katie Dague and that the relation of debtor and creditor never existed between her, on the one hand, and Mr. Gilbert, or plaintiff, on the other. Neither do defendants seek to rescind the sale to plaintiff, nor to set aside the deed to her, on the ground of accident, mistake, or fraud, or for any reason; they are willing for the deed to stand. Defendants' sole contention was that there was a parol agreement made at the time the deed to plaintiff was executed and delivered, and as a part of the consideration thereof, to reconvey the land to Katie Dague, at any time thereafter, clear of encumbrances, for the sum of $5,000, and they seek an enforcement of such parol agreement, in this action.

Plaintiff made proper and timely objections to all the testimony by which defendants sought to establish the parol agreement re-

lied upon, which objections were overruled.   Three special ques-
tions were submitted to, and answered by the jury, as follows:

"1. Did M. B. Gilbert, on August 25, 1923, and prior to the signing and
delivery of the deed from the Dague's, promise and agree with Katie Dague
to reconvey said land clear to her on payment of $5,000?  A. Yes.

"2. If you answer the above question in the affirmative, then state whether
Katie Dague believed and relied upon such promise, and agreement, at the
time of the signing of the deed?  A. Yes.

"3. If you find  that such promise or agreement was made, state whether
Katie Dague was induced thereby to sign and deliver such deed.  A. Yes."

. Plaintiff's motion for judgment as prayed for, upon the evidence
and entire record of the case, notwithstanding the special verdict of
the jury, was overruled; also, her motion for a new trial.   The court
rendered judgment—

"that the plaintiff shall execute a good and sufficient deed of conveyance for .
the land described in the plaintiff's petition conveying the same to Katie
Dague, the defendant herein, and deposit said deed with the clerk of this
court to be delivered to Katie Dague upon the payment by her to the said
clerk for the plaintiff the following sums of money; $1,500 with interest
thereon at six per cent from August 25, 1923, and the sum of $105 with in-
terest thereon at six per cent from October 1, 1923.  It is further ordered and
adjudged that if the plaintiff herein fails or refuses to execute the said deed
to the defendant, Katie Dague, as herein ordered, within thirty days from
this date, that this decree shall operate as such transfer of title and shall vest
the title to said land in the said Katie Dague as fully and to the same effect
as such deed of conveyance would do if executed by said plaintiff."

It will be observed that the relief granted is the character of re-
lief which would have been granted by a court of equity had an
action been brought by defendants against plaintiff for the specific
performance of a valid, enforceable contract for the conveyance
of land.  We shall pass by the question whether such relief could
have been granted under the pleadings as they stood, for the reason
that that question is not argued, and shall regard the pleadings as
being so amended as to present that question, since the trial court
obviously so regarded them and the case was tried and determined
upon that theory.   Our statute provides (R. S. 33-106) that no
action shall be brought upon any contract for the sale of land
unless the agreement upon which such action shall be brought, or
some memorandum or note thereof, shall be in writing, signed by the
party to be charged, or by some other person by him or her lawfully
authorized in writing.   This provision of the statute applies with
equal force to a defendant who seeks to enforce the performance

33—120 Kan.

of a contract for the conveyance of land as it does to the plaintiff. (*Jones v. Bank,* 103 Kan. 297, 173 Pac. 977.) There is no contention on behalf of defendant that there was any written agreement to reconvey the property executed either by the plaintiff or by Gilbert, hence, under the statute referred to and the repeated decisions of this court, the defendant cannot maintain an action nor support a defense for the specific performance of such parol agreement.

It is argued on behalf of appellee that because of the parol agreement of Gilbert, the plaintiff held the title in trust for the defendant, Katie Dague. The statute (R. S. 67-401) provides that no trust concerning land, except such as may arise by implication of law, shall be created, unless in writing signed by the party pleading the same, or his attorney thereto, lawfully authorized in writing. Since there was no writing here, there can be no trust created, unless it is one which arises by implication of law. A parol agreement to convey land at some future date for a named price does not create a trust by implication of law. (*Miller v. Edgerton,* 38 Kan. 36, 15 Pac. 894; *Goff v. Goff,* 98 Kan. 201, 158 Pac. 26; *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1; *Bolin v. Krengel,* 116 Kan. 459, 227 Pac. 266, and cases there cited.)

Appellee argues that the parol promise of Gilbert to reconvey the land clear at any future date upon payment of $5,000, and his refusal later to do so, constitutes fraud. One difficulty with this contention is that the case was not tried nor submitted to the jury, nor was the judgment rendered upon the theory of fraud. Neither the jury nor the court made any finding of fraud in this case. Fraud might be the basis of a rescission or setting aside of the deed, which was not sought nor obtained by defendant, but would not support a decree for the specific performance of the parol contract to reconvey. Ordinarily a refusal of a party to carry out a contract is not fraud. There are circumstances under which a promise made with no intention to fulfill it at the time, which intention was previously determined, and the promise made by way of deceit, would constitute fraud, but the circumstances of this case do not warrant the application of that doctrine. (See cases collected in note, 35 A. L. R. 280-320.) The defendant necessarily must disaffirm the conveyance for fraud or some other sufficient reason and seek to have it set aside and the parties put in *statu quo;* or affirm the conveyance and rely upon a promise to reconvey. (*Stevens v.*

*Matthewson,* 45 Kan. 594, 26 Pac. 38; *Hamilton v. McGinnis,* 119 Kan. 719, 241 Pac. 690.) They chose to affirm the conveyance to plaintiff, thereby retaining the consideration therefor, and to rely wholly upon the promise to reconvey. The record discloses the trial proceeded to determine whether such a parol promise had been made and to enforce it by a decree tantamount to a decree for specific performance. This cannot be done under our statute and decisions above cited.

The judgment of the court below will be reversed with directions to sustain plaintiff's motion for judgment.

BURCH, J., not sitting.