No. 40,033

In the Matter of the Estate of Bessie Bradley, Deceased. MARSHALL A. BRADLEY, Executor of the Last Will and Testament of Marshall A. Bradley, Sr., Deceased, ELIZA WASHINGTON and WILLIE BARTON, *Appellants,* v. WEALTHIE MEADOR and JOHN J. BUKATY, Administrator of the Estate of Bessie Bradley, Deceased, *Appellees.*

(297 P. 2d 180)

Opinion filed May 5, 1956.

*Thomas E. Joyce,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Joseph P. Jenkins,* and *Norma Braly,* all of Kansas City, were with him on the briefs for the appellants.

*Myles C. Stevens,* of Kansas City, argued the cause, and *Elmer C. Jackson, Jr.,* of Kansas City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action to establish a postnuptial agreement. Marshall A. Bradley, Sr., hereinafter referred to as Marshall, and Bessie Bradley, as Bessie, were married late in life. Both had children by prior marriages. Appellants Eliza Washington and Willie Barton were the daughter and granddaughter of Marshall Bradley, Sr., and devisees in his last will and testament. The appellee Wealthie Meador was the daughter of Bessie Bradley. Bessie died intestate, a resident of Wyandotte County, December 4, 1952. Her husband, Marshall, died testate, a resident of Ellis County, Texas, February 14, 1953. Administration was had upon the estate of Bessie in Wyandotte county. In due time, the administrator filed his petition for final settlement in which he requested the court to determine the heirs at law of Bessie to be her husband, Marshall, and her daughter, Wealthie Meador. To the administrator's petition for final settlement, Wealthie Meador filed objections and pleaded a postnuptial agreement between her mother, Bessie, and her stepfather, Marshall, wherein it was alleged they agreed that all property owned by the parties prior to their marriage would pass upon death to the children of the respective parties and that, in

keeping with the agreement, Bessie assigned all her right, title and interest in the property of Marshall over to him, and that property was distributed to the heirs of Marshall.

In further keeping with the agreement, Marshall executed a deed and will conveying his interest in Bessie's property to her and, as a result of the agreement, Bessie's daughter was the sole and only heir at law of Bessie, and Marshall took nothing upon the death of Bessie.

Marshall Bradley, Jr., executor of the last will of Marshall, filed an answer alleging that Marshall died February 14, 1953, leaving a will dated January 11, 1953, which was admitted to probate in Ellis county, Texas, and subsequently admitted to probate in Wyandotte county, by which will Marshall devised all his property to Willie Barton and Eliza Washington, granddaughter and daughter, respectively. It was denied that a postnuptial agreement existed between Marshall and Bessie and, under the terms of Marshall's will, they inherited an interest in the property in question. On the issues framed by the parties, the case was certified to the district court for trial.

At the conclusion of the evidence, the trial court rendered its judgment, finding all the issues generally in favor of appellee, Wealthie Meador, and specifically found that a postnuptial agreement was entered into between Marshall A. Bradley, Sr., and Bessie, his wife, during the lifetime of the parties; that it was valid and binding on the heirs of the parties; that Wealthie Meador was the daughter and sole heir of Bessie Bradley, deceased, and entitled to the property in question, and entered judgment accordingly. From an order overruling appellants' motion for a new trial, they appeal. Their specifications of error may be summed up in one statement, i. e., that the judgment is contrary to and not supported by the evidence.

Appellants assert that there was no competent evidence in the record of a postnuptial agreement in writing or otherwise, save the mention of an "agreement" in a letter from Marshall A. Bradley, Sr., dated July 30, 1951, to James A. Meador, and in the testimony of Meador, which is a conclusion to the effect that Marshall told him specifically the same as was in the letter.

This is purely a fact case. The rule is well established in this state that the determination of issuable facts is no concern of the appellate court provided there is sufficient evidence on which the judgment is based. Moreover, a judgment on the facts made by the

trial court will not be disturbed on appeal unless all the competent and credible evidence constrains a different conclusion. (*In re Estate of Beeler*, 175 Kan. 190, 194, 262 P. 2d 939, and cases cited therein.) In view of the well-established rules of law, we will summarize the evidence to determine whether it is sufficient to sustain the trial court's judgment.

There was testimony to the effect that Marshall and Bessie entered into a contract wherein they agreed neither would share in the other's property; that his property should go to his children, and her property to her daughter, Wealthie. Marshall sold his property, livestock and farm machinery in Texas and divided it with his children and grandchildren. He had four lots in Ennis, Texas, which were to be disposed of and divided with his children. Bessie did not want anything Marshall had in Texas, and he did not want any of her property in Kansas. On January 18, 1948, pursuant to the agreement, Marshall made a will which devised the whole of his estate to his wife. On February 19, 1948, he made and executed a quitclaim deed to Bessie conveying whatever interest he had in the Kansas real estate to her. A letter written by Marshall to Bessie dated December 15, 1950, contained the following:

"You continue to write me 600 East Decatur Street, Ennis. Be sure and leave the place so Wealthie and her children will get it, because that was our agreement, and it holds good now and forever. I want to be sure because of the agreement, and I am satisfied with that."

On July 30, 1951 Marshall wrote a letter to James Meador, husband of Wealthie, as follows:

"Reverend James A. Meador, 7-30-51, Colorado Springs, Colorado. While thinking of you and of your family, it pleases me to let you hear from me this morning. I feel nothing less than a Christian, yet leaning and trusting in Jesus and waiting for the end to come. Physically I am getting weaker; spiritually I am growing stronger. Here is what I want to tell you and Wealthie to see that no indebtedness comes against the place in Kansas City, Kansas. She, Bessie, can't pay like taxes or other indebtedness, and I know as long as she keeps her health she will keep it straight, but who knows how long that will be, and she might be timid toward telling you her business and lots more I could tell you but wont now. Don't think there is any difference between her and I. When we married we made an agreement. She would not let me take anything that me and my wife and children had bought, only just my clothes. She went before the law here in Ennis, Texas, and signed papers to that effect. When we built the house in Kansas City, I did the same. My children know it and are well satisfied and have to be. I didn't know whether Bessie had told you all about it or not. Lots more I will say when I get an answer from you . . ."

Witness Meador testified that he had a conversation with Marshall

in which he told him specifically the same thing as contained in the foregoing letter. While appellants contend this was a conclusion, there was no objection to the answer when made at the trial.

Andrew Lewis testified that he was acquainted with Bessie and Marshall as neighbors and, in a conversation, Marshall told him that if anything happened to him, his children were to get his property in Texas, and Bessie's daughter, Wealthie, was to get her property in Kansas.

The trial court had the entire matter before it, saw the witnesses, observed their demeanor, heard the whole story, and its finding that the postnuptial agreement entered into between Marshall and Bessie during their lifetime was a valid agreement, binding on the heirs of the parties involved, is sustained by sufficient evidence. In considering the agreement in conjunction with Marshall's will of January 18, 1948, the quitclaim deed executed by him to Bessie, and the letters written by Marshall to Bessie and James Meador, and when interpreted they show the intention of each party to exclude the other from the right of inheritance to their respective properties.

Appellants contend that the quitclaim deed was erroneously admitted in evidence for the reason appellees had failed to prove delivery of the deed during the lifetime of Marshall. This objection is without merit for the reason that possession by the grantee of a deed, absolute in form, creates the presumption of delivery which can be overthrown only by clear and convincing evidence, and the burden of showing nondelivery is on the party who raises that issue. (*Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209.) Appellants object to the admission of the will of Marshall, dated January 18, 1948 on the ground that it was repudiated by his subsequent will which was admitted to probate in Texas. This evidence was admissible as tending to show that an agreement was made between the parties and that Marshall intended to comply with the terms thereof.

Appellants further contend that the oral agreement made by the parties violated the statute of frauds. We are of the opinion that the separate writings, hereinbefore related, when construed together contained sufficient terms upon which the court could base its judgment that the contract was made between the parties, and was sufficient to satisfy the statute. (*Schneider v. Anderson,* 75 Kan. 11, 88 Pac. 525; *Jordon v. Clark,* 86 Kan. 509, 121 Pac. 345.)

Other contentions have been examined and found to be without merit. In view of what has been said, the judgment is affirmed.