(173 P.3d 671)
No. 97,614

MICHAEL R. YOUNG, *Appellant/Cross-appellee*, v. EDWARD G. HEFTON, *et al.*, *Appellees/Cross-appellants*.

Opinion filed December 21, 2007.

*Jarrod C. Kieffer*, Stinson Morrison Hecker LLP, of Wichita, for appellant/cross-appellee.

*Norman G. Manley*, Davis, Manley & Lane, LLC, of El Dorado, for appellees/cross-appellants.

Before RULON, C.J., GREENE, J., and BRAZIL, S.J.

GREENE, J.: Michael R. Young appeals the district court's judgment against him on his claim for specific performance of a contract to purchase a tract of real estate resulting from his bid at an auction (tract 3). Edward G. Hefton, and other members of the Hefton family who were the sellers at that auction, cross-appeal the district court's judgment of specific performance in favor of Young on a different tract of real estate placed at auction by the Heftons (tract 4). We affirm the district court's conclusion that there was no contract formed on tract 3, but that an enforceable contract was formed on tract 4.

## *Factual and Procedural Background*

The Hefton family hired an auctioneer to sell five tracts of land at public auction to be held October 8, 2005, and the listing agreement set a minimum price on each tract. The auction was advertised extensively in newspapers, by public sale bills, and on the auctioneer's website. These public notices were not consistent as to the terms of the auction, but none of them specifically stated there were minimums or that the auction was "with reserve." The sales bill, however, stated: "All contracts will be signed at the end of the auction. Earnest money is only refundable if seller rejects contract."

On the day of the auction, the auctioneer made announcements regarding the terms of each sale, but the evidence is conflicting as to the content of such announcements. Four witnesses and the auctioneer testified that the announcements mentioned that bids or contracts were subject to final approval by the sellers, whereas seven other witnesses testified that there was no mention of minimums or conditional contracts.

Young had expressed interest in the sale prior to the auction and had inquired of the auctioneer about the terms of the sales, but the evidence is conflicting as to the content of these conversations

as they related to minimums. In any event, Young attended the auction and was the successful bidder on both tracts 3 and 4. On both bids, the auctioneer closed the bidding at Young's bids with the call, "Mark it down." As to Young's bid on tract 3, the bid was $925/acre or $275/acre under the minimum established by the Heftons. As to Young's bid on tract 4, the bid was $780/acre or $30 above the minimum of $750/acre.

Following the bidding, Young was told by the auctioneer that he could not buy tract 3 due to his bid being under the minimum of $1200/acre, but that he could purchase tract 4. Young responded by saying he did not want tract 4 without tract 3. A discussion ensued, but no accommodation was reached and Young left the auction with the parties at an impasse.

Five days later, Young tendered checks to the Heftons' attorney for both tracts at the bid prices. These checks were returned to Young suggesting that he contact the auctioneer. Young then tried to purchase tract 4 at his bid price with a tender to the auctioneer, but the check was rejected with a counteroffer of $1500/acre, twice the original minimum for this tract. Young then filed his action against the Heftons seeking specific performance of purported contracts on both tracts at the bid prices.

After a bench trial, the district court found the auction was intended to be a sale with reserve because the Heftons communicated the minimums on the tracts to the auctioneer, who "failed to clearly communicate with prospective purchasers information they would want to know and deserved to know, simply whether there were minimums on the tracts." The court also found that there were "signs and indications before and during this auction that the sellers were retaining some measure of final approval or control. The sale bill's reference to seller rejection of contracts so indicates." The court admitted that the language is open to interpretation, one being that contracts are subject to approval of the sellers for whatever reason.

The district court found that there was no meeting of the minds as to tract 3 because Young offered $925/acre, the minimum was $1200/acre, and the two parties did not agree on a price term. It

concluded that no contract existed between the parties as to tract 3.

The court found that a valid contract was formed as to tract 4 when the auctioneer indicated the sellers' acceptance of Young's high bid of $780/acre after the bidding. It found that Young neither rescinded nor repudiated the contract on tract 4, and that Young was entitled to specific performance at the bid price of $780 per acre.

Both parties appeal.

### Standards of Review

Whether a binding contract has been formed depends on the intention of the parties and is a question of fact. *Reimer v. The Waldinger Corp.*, 265 Kan. 212, 214, 959 P.2d 914 (1998). When the district court has made findings of fact and conclusions of law, we determine whether those findings are supported by substantial competent evidence and whether the findings sufficiently support the conclusions of law. *Southwest & Assocs., Inc. v. Steven Enterprises*, 32 Kan. App. 2d 778, 780, 88 P.3d 1246 (2004). Substantial competent evidence is such legal and relevant evidence as to provide a substantial basis of fact from which the issues can reasonably be resolved. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

With regard to the statute of frauds question framed by this appeal, our standard of review in determining whether an alleged contract satisfies the statute of frauds involves the interpretation of a statute and is unlimited. *Ayalla v. Southridge Presbyterian Church*, 37 Kan. App. 2d 312, 317, 152 P.3d 670 (2007).

### Did the District Court Err in Concluding a Contract Was Formed as to Tract 4 but not as to Tract 3?

#### General Rules Pertaining to Auctions

The district court commented that there is "a virtual absence of case law in Kansas with respect to auction sales of realty" and that there are no Kansas statutes governing this type of transaction. We agree, but we note that K.S.A. 84-2-328, of the Kansas Uniform

Commercial Code—Sales, sets forth rules for auction sales of "goods" and is instructive although not technically applicable to auction sales of real estate. See *Well v. Schoeneweis*, 101 Ill. App. 3d 254, 257-58, 427 N.E.2d 1343 (1981); (holding that although U.C.C. 2-328 does not apply to auctions of real estate, the same laws apply to real and personal property); *Chevalier v. Sanford*, 475 A.2d 1148, 1149 (Me. 1984) (applying U.C.C. 2-328 by analogy); *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 219 (Me. 1973) (applying U.C.C. 2-328 and finding no significant difference between real and personal property law); *Outpost Cafe, Inc. v. Fairhaven Savings Bank*, 3 Mass. App. 1, 3, 322 N.E.2d 183 (1975) (applying U.C.C. 2-328 same as to the sale of real property); *Hoffman v. Horton*, 212 Va. 565, 567, 186 S.E.2d 79 (1972) (same). Our statute, K.S.A. 84-2-328, provides:

"(1) In a sale by auction if goods are put up in lots each lot is the subject of a separate sale.

"(2) A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. . . .

"(3) Such a sale is with reserve unless the goods are in explicit terms put up without reserve. In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time. In either case a bidder may retract his bid until the auctioneer's announcement of completion of the sale, but a bidder's retraction does not revive any previous bid.

"(4) If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the goods at the price of the last good faith bid prior to the completion of the sale. This subsection shall not apply to any bid at a forced sale."

The general rule regarding terms and conditions of an auction sale is that the seller of property at auction has the right to prescribe, within reasonable limits, the manner, conditions, and terms of sale. Usually the auctioneer, at the time and place appointed for the auction, announces these terms and conditions that, when so announced, are generally deemed to supersede all others and to bind the purchaser even though he or she did not hear or understand the announcement or was not present at the time of the

announcement and such terms were not brought to his or her actual attention. *Money v. Ft. Hays State Univ. Endowment Ass'n,* 31 Kan. App. 2d 322, 327, 64 P.3d 458, *rev. denied* 276 Kan. 969 (2003); 7 Am. Jur. 2d, Auctions and Auctioneers § 17.

There are generally three types of auctions: (i) with reserve; (ii) without reserve; and (iii) conditional. K.S.A. 84-2-328 recognizes a presumption that an auction is "with reserve" unless there are explicit terms to the contrary. In an auction with reserve, the placing of the property for sale is an invitation for bids, not an offer to sell. Accordingly, each bid constitutes an offer that may be accepted by the seller. Bids are accepted on the seller's behalf and a contract is formed when the auctioneer closes the bidding, typically by the fall of the hammer or other method that notifies the high bidder that the bid has been accepted. See 7 Am. Jur. 2d, Auctions and Auctioneers §§ 17, 20, 31. In an auction with reserve, the seller does not have any right to accept or reject bids after the close of the bidding. See *J & L Investment v. DNR,* 233 Mich. App. 544, 551, 593 N.W.2d 196 (1999).

In an auction without reserve (also called an "absolute" auction), the placing of property for sale constitutes an offer to sell and each bid represents a conditional acceptance, subject to receipt of a higher bid. Accordingly, the seller is bound by each successive bid and may not withdraw the property from sale unless no bid is made within a reasonable time. Thus, in an auction without reserve, the seller may not withdraw or refuse to sell the property once the bidding has been opened on that property unless no bid is made within a reasonable time. 7 Am. Jur. 2d, Auctions and Auctioneers § 36; see *Feaster Trucking Service, Inc. v. Parks-Davis Auctioneers, Inc.,* 211 Kan. 78, 82-83, 505 P.2d 612 (1973).

In a conditional auction, the seller reserves the right to accept or reject bids *after* the close of the bidding. Most authorities recognize that in order for an auction to be considered a conditional auction, the conditions must be effectively communicated to prospective bidders. Those conditions generally inform potential buyers that the auctioneer does not have the authority to accept the high bid and that bids will remain mere offers until accepted by the sellers. See, *e.g., Money,* 31 Kan. App. 2d 322, Syl. ¶ 6; *Cuba*

*v. Hudson & Marshall*, 213 Ga. App. 639, 640, 445 S.E.2d 386 (1994) ("[T]here is a distinction between auctions which are merely conducted with reserve and those in which the seller explicitly reserves the right to approve, confirm or reject the high bid."); see also *Coleman v. Duncan*, 540 S.W.2d 935, 937 (Mo. App. 1976); *East v. Brown*, 986 P. 2d 523, 525 (Okla. App. 1999). The key distinction between an auction with reserve and a conditional auction is that property can only be withdrawn *before* the close of bidding in the former, but it can be withdrawn *after* the close of bidding in the latter.

## What type of auction was involved here?

Here, the district court found that the sales bill contained the language: "All contracts will be signed at the end of the auction. Earnest money is only refundable if seller rejects contract." The court then concluded this language may be open to several interpretations, but "one obvious interpretation is that all contracts are subject to final approval of the sellers for whatever reason." Although the auctioneer's website did not mention conditional terms, it said: "Any announcement made the day of the auction takes precedence of any printed ad." Finally, regarding any such announcements, the district court found there was conflicting testimony regarding preliminary announcements at the auction, but concluded "[t]here were signs and indications before and during this auction that the sellers were retaining some measure of final approval or control." We decline to reweigh the conflicting evidence; we simply review the record and conclude substantial competent evidence supports these findings of the district court.

Based upon these findings, we conclude the sales auction was indeed a conditional auction where the sellers retained the right to accept or reject bids until after the bidding ceased. Our conclusion is not only the result of the district court's findings as to "sellers retaining some measure of final approval," but it is also buttressed by the auctioneer's testimony that "mark it down" was not an indication of bid acceptance and should be contrasted to a call of "sold" when the auction is absolute. The call "mark it down" has been interpreted as merely an indication to record the highest bid

for seller consideration. See, *e.g.*, *Marten v. Staab*, 4 Neb. App. 19, 30-31, 537 N.W.2d 518 (1995), *aff'd* 249 Neb. 299, 543 N.W.2d 436 (1996). Because the auction was conditional, Young's bids were offers subject to sellers' acceptance after the bidding closed at the auctioneer's call of "mark it down."

## Was a contract formed as to either tract?

Having concluded the sales auction was conditional, did the sellers accept Young's bids for tracts 3 and 4? Young was informed by the auctioneer that his bid was not accepted for tract 3. Clearly, there was no contract formed on tract 3, and the district court did not err in so holding.

As to tract 4, the district court found:

"Young was advised however that he could go ahead and sign a contract on Tract 4 since his high bid of $780 met or exceeded the minimum. Mr. Young's response was that he was not interested in purchasing Tract 4 alone at that time. Rather, he expected and desired to buy both tracts for the high bid that he had made on each tract.

"After considerable back and forth between Mr. Young and [the auctioneer] it was clear that the parties were at an impasse. Mr. Young left. He contacted his attorneys almost immediately."

The district court held that a contract was formed between the parties when Young's high bid was accepted after the auction by the auctioneer. Although Young refused to execute a written contract that day, the court held he "neither rescinded nor repudiated the contract on Tract 4. He simply paused long enough to try and determine whether he could compel the sale to him of both tracts." Whether there has been a contract repudiation within a reasonable time is a question of fact. See *Theis v. duPont, Glore Forgan, Inc.*, 212 Kan. 301, 304-05, 510 P.2d 1212 (1973). Here, we conclude there is substantial competent evidence to support the court's finding of no repudiation.

Young testified that he continued to reiterate to the auctioneer that he did not want to purchase tract 4 alone, but that he wanted to purchase both tracts. He testified he never rescinded or repudiated the contract or bid. He also testified that he had several conversations with the auctioneer after the auction. Finally, when

most people had left, Young told the auctioneer, " 'If you don't think this is going to be resolvable, you know, I can't stay forever.' " Young testified that he waited a little longer while the auctioneer was talking to someone else and then he finally left. Later, Young tendered earnest money and an executed contract on this tract. The district court apparently believed Young's testimony that he did not intend to repudiate the contract and merely left the auction at a negotiating impasse.

Based upon our conclusion that the auction was conditional in nature, Young's bid was never accepted on tract 3, but his bid on tract 4 was accepted after the close of the auction and was not repudiated by Young. Unless barred by the statute of frauds, a contract was formed on tract 4 by Young's offer through his bid and by the auctioneer's acceptance on behalf of sellers following the sales auction.

### Does the Statute of Frauds Bar Young's Contract Claim on Tract 4?

The Heftons argue that Young's claim for specific performance of a contract on tract 4 is barred by the applicable statute of frauds, K.S.A. 33-105 and K.S.A. 33-106, requiring contracts for sale of real estate to be in writing and signed by the parties to be bound. The district court addressed this claim in its early denial of the Heftons' motion for summary judgment, reasoning:

"Here, Plaintiff has proffered four documents that he claims are sufficient to satisfy the Statute of Frauds in this matter: the listing agreement between the Defendants and the auctioneer, the internet sale bill, and bid sheets for the two tracts of land at issue herein. The Court finds that the parties to the contract are adequately identified by the listing agreement identifying the sellers and signed by Edward Hefton, and the bid receipts, identifying Michael Young by his signature. The internet advertising materials, which Plaintiff claims to have possessed at the time of the auction, adequately describes the lands to be sold, by picture and legal description, and the terms of the sale, including estimated closing dates, possession dates, and earnest money requirements, among other. Finally, the Court finds that the price term is adequately reflected in the bid receipts for the tracts of land at issue. Therefore, the Court finds that the Statute of Frauds has been satisfied in this matter."

A sale of land at auction is within the statute of frauds to the same extent as any other sale or contract of sale relating to land. 7

Am. Jur. 2d, Auctions and Auctioneers § 37. In order to satisfy the statute of frauds, the writings concerning the sale should contain everything necessary to show the contract between the seller and buyer. 7 Am. Jur. 2d, Auctions and Auctioneers § 43. For purposes of satisfying the statute of frauds, separate writings may be construed together to determine whether there is sufficient written agreement upon which to base an enforceable contract. See *Barnhart v. McKinney*, 235 Kan. 511, 523-24, 682 P.2d 112 (1984); *In re Estate of Bradley*, 179 Kan. 539, 542, 297 P.2d 180 (1956). We examine the applicable statutes and the evidence in the record and conclude that the district court correctly applied the statutes in holding that the writings of the parties were sufficient.

K.S.A. 33-105 states:

"No leases, estates or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law."

K.S.A. 33-106 states:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

In *Kenby Oil Co. v. Lange*, 30 Kan. App. 2d 439, 442, 42 P.3d 201 (2002) (citing *Walton v. Piqua State Bank*, 204 Kan. 741, 747, 466 P.2d 316 [1970]), the court stated:

" ' "A Memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his lawfully authorized agent, which states with reasonable certainty (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (b) the land or other subject matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." ' [Citation omitted.]"

See Restatement (Second) of Contracts § 131 (1979).

In this case, the district court's findings are supported by substantial competent evidence. K.S.A. 33-105 and K.S.A. 33-106 are

satisfied by the "Exclusive Right to Sell Listing Agreement," which identifies the tracts of land to be sold and is signed by Ed Hefton, for sellers, together with the "Bid Sheet Information" or bid receipt and check reflecting earnest money signed by Young. The land is described in the Internet sales bill, the printed sales bill, and the listing agreement. Finally, all terms and conditions of the sale are in the Internet sales bill and printed sales bill.

The district court's finding that Young's claim on tract 4 is not barred by the statute of frauds must be affirmed.

Affirmed.