LLOYD M. WELL *et al.*, Plaintiffs-Appellees, *v.* BRUCE R. SCHOENEWEIS *et al.*, Defendants-Appellants.

Fourth District    No. 17008

Opinion filed October 29, 1981.

Stephen P. Schrimpf, of Alton, for appellants.

James R. Morrison, III, of Balsters & Morrison, of Bethalto, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs, buyers at a public auction of farm land, brought this action for specific performance against the defendant sellers. The circuit court of Macoupin County, sitting without a jury, entered judgment in favor of the plaintiffs and the defendants appeal. We affirm.

The evidence and exhibits at trial disclose that the defendants determined to sell their interests in 98 acres of farm land and to that end employed Homer Henke, a real estate salesman and broker as well as an auctioneer. Under their direction Henke prepared the sale bills and advertising on a budget set by defendants. He was to be compensated by a commission predicated on the sale price which he obtained.

The sale bills which were distributed prior to the sale contained the following:

"TERMS:

Buyer to enter into written real estate contract. Purchase price 98 acres X per acre bid price, unless buyer elects to have survey made at buyers expense. In which case, acreage determined by survey will be used. Buyer to pay ten per cent [10%] of purchase price day of sale and balance within 30 days or upon delivery of warranty deed conveying merchantable title. Buyer to have possession of tillable acreage after 1979 crops have been harvested. Buyer to have possession of remainder upon completion of Real Estate contract. Seller to pay 1979 taxes due in 1980. Buyer to pay 1980 taxes due in 1981. Sale held subject to owners approval."

At some time after the printing of the sale bills the defendants agreed with the auctioneer that they would offer the farm on an option as well as under the terms of the sale bill. The option was to allow the highest bidder to purchase the farm with a 10-percent downpayment on the day of the sale, then quarterly payments for 10 years under a contract for deed. The defendants also decided to allow the purchaser the option of taking a

landlord's share of the crops and pay the 1979 taxes due in 1980 or to leave the landlord's share of the crops with the defendants, requiring them to pay those taxes.

The sale was held on Saturday, July 14, 1979, and was cried by Henke as previously arranged. There is no dispute that the alternative terms concerning installment payments were announced at the sale by Henke. Plaintiffs were the successful bidders and tendered to Henke their check in the amount of 10 percent of the purchase price. They and Henke then signed a printed form which bore Henke's advertising and picture at the top and then is read in pertinent part as follows:

> "PURCHASE OFFER
>
> I certify that I am Ready, Willing and Able to pay $118,090 for the 98 Acre Farm—Schoeneweis and Evans Property Property in Macoupin County, in the state of Illinois and to Immediately Execute a SALES-PURCHASE CONTRACT, Subject to the Terms and Conditions as Publicly Announced this date:
>
> July 14, _____ 1979
> Don Well Lloyd Well Brighton, Ill. _____ Buyer
> Olen Leonard _____ Buyer
> Address:     Brighton _____
> _____; Phone   372-3630 _____
> Witness:     Homer Henke
> [Underscoring indicates blank lines on the form; material inserted is handwritten on original.]"

The purchase offer form, as set forth above, was admitted at trial without objection. Henke testified that the check was tendered and the purchase order form executed immediately after the property was struck off to plaintiffs, but then a dispute erupted concerning the meaning of "quarterly payments." Plaintiffs asked if such payments could be made in smaller amounts from the beginning with a "balloon" payment at the end. Henke and defendants insisted that equal payments were meant. It was then agreed that all parties would meet at the office of defendants' attorney to settle the matter.

The meeting was held the following Wednesday with plaintiffs, defendants, defendants' attorney, and Henke present. The evidence was in conflict as to what the various parties understood from the meeting. It is clear that the quarterly payments were supposed to be equal, but the principal difficulty arose over defendants' proposition, broached outside plaintiffs' presence, that the interest rate be reduced from 10 percent to 8 percent and that the gross sales price per acre be inflated accordingly; there was also some discussion about an assignment from defendants to plaintiffs of a contract for deed which was the basis of defendants' ownership of the 98 acres. Defendants were the contract purchasers from a

third party and apparently were attempting to use the assignment method as a partial payment on the gross purchase price.

In any event, a contract was drawn up with the increase in gross price per acre and a concomitant reduction in the interest rate, together with an assignment from defendants to plaintiffs of their contract for deed. Plaintiffs refused both the contract and the assignment.

Then ensued considerable correspondence between defendants' attorney and plaintiffs about the matter. It appears that defendants would accept nothing else except the contract as drafted and the assignment. Plaintiffs stood on their bid under the conditions as announced at the sale.

Meanwhile, Henke had placed plaintiffs' checks for the 10 percent of the purchase price in an escrow account. He testified that he had never had an escrow account before and that his past practice was to turn over the down payment to a seller on the day of sale. He further testified that it was "agreeable" to all parties that he hold the funds until the transaction was completed. On October 30, 1979, he received a letter from defendants' attorney instructing him to return the money to plaintiffs; however, he was still holding it, on the advice of his attorney, on the date of trial.

Plaintiffs filed suit for specific performance and alternatively for damages on November 5, 1979. The trial court by an original judgment order and a later amended judgment order found in favor of the plaintiffs and against the defendants. Among its significant findings in the orders were that Henke was the agent of defendants and that the downpayment had been made to him as such; that plaintiffs had not abandoned the contract; that the Statute of Frauds did not defeat the action; and ordered the defendants to perform the terms of the contract, which it found to be: 98 acres at $1,205 per acre, the balance of the purchase price to be paid at the option of the plaintiffs either within 30 days or by contract for deed with equal quarterly payments over a 10-year period with interest at 10 percent.

■■ A central fact in this litigation is the existence of the public auction sale of the real estate. While such procedure is not unknown in private transactions, the great majority of reported authorities concern auctions of personal property in such circumstances. The public auction of real estate appears most often in the context of judicial or execution sales. However, it is our opinion that the basic rules governing an auction are the same, whether it be for chattels or judicial sales or private sales of real estate.

■■ The sale at auction of chattel property is now governed by section 2—328 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—328). Defendants claim that the trial court improperly applied this section to the instant case in that it does not apply to real estate. The record discloses that the trial court did make reference to the Uniform Commercial Code in its letter opinion, but there is no indication that it

relied on it in making its final judgment. Even if it did, this court, as a reviewing court, may affirm a judgment of a trial court for reasons other than those advanced by the trial court. *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 373 N.E.2d 1018.

The fundamental rule at common law, and now incorporated into statute insofar as chattels are concerned, is that a bid at an auction constitutes an offer to buy, the fall of the hammer or any other customary means constitutes the acceptance, and a contract is then made. In the case of judicial sales at auction, there is a variation because of the necessity of court supervision of the sale which it has ordered. The final acceptance is made by the court, not the crier of the sale, and the bid remains an offer only until confirmation of the crier's acceptance by the court. *Guettel v. Hillebrecht* (1952), 347 Ill. App. 104, 106 N.E.2d 146.

■■ At the private auction of real estate, as has been said, the contract is made upon the fall of the hammer: the bidder agrees to buy and to pay the amount of his bid; the owners agree to sell and convey at that price. The only remaining question is the terms of sale. The rule for real estate is the same as for chattels. The publicly proclaimed terms of sale are binding upon both parties. In Restatement (Second) of Contracts §28(2) (1981) it is said:

> "Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up."

Compare *Blade v. Sloan* (1969), 108 Ill. App. 2d 397, 248 N.E.2d 142; *Diefenbach v. Gorney* (1968), 93 Ill. App. 2d 51, 234 N.E.2d 813; *Chandler v. Morey* (1902), 195 Ill. 596, 63 N.E. 512.

■■ In applying these principles to the instant case, it is clear that the contract was made when Henke struck off the property to the plaintiffs. The terms of sale were clearly set forth in the sale bills and the public announcement at the time of the auction. Defendants argue that the language in the sale bills, "Buyer to enter into written real estate contract," makes the written contract a precondition to the acceptance of the bid. We do not agree. Any written contract would be nothing more than a memorialization of what had taken place at the auction. Defendants' efforts to alter the terms of sale *ex post facto, i.e.*, change of the interest rate, assignment of the contract for deed, were necessarily futile. There is nothing in either the sale bills or the public pronouncement to indicate that other and different terms were to be incorporated in the written contract. Defendants elected the auction method of disposing of their property, and they are bound by the rules governing auctions. After the

hammer falls, there is no further room for negotiation, and any misgivings on the part of the sellers come too late.

Defendants argue that the contract was too indefinite to be susceptible of specific performance and cite a long list of specific performance cases where such was the holding of the courts. We have no quarrel with the doctrine, which is well established in the law, but it has no application here. None of the cases cited involved an auction sale, but were concerned with oral contracts to convey, negotiations which had not yet been completed, ambiguous terms (what is a "standard mortgage"), and the like. Specific performance cases, like will construction cases, have very little precedential value, since each must be determined on its own facts. It has been truly said that no will has a brother. The same is equally applicable to contracts.

In connection with the same contention, defendants argue strenuously that Henke was not their agent and that his actions in placing the 10-percent payment into escrow indicate that the parties were still engaged in negotiation. We find the trial court's determination of agency fully supported by the evidence.

Henke became an escrow agent *de son tort*. No one instructed him to open an escrow account, and his testimony as previously recounted was that the instructions to hold the 10 percent came from the defendants and was "agreeable" to the plaintiffs. Afterwards, the defendants, through their attorney, instructed him *ex parte* to return the funds to the plaintiffs. If a true escrow arrangement had been contemplated, it would require the consent of both parties to its closure.

■■ Furthermore, as has already been indicated, Henke made all the arrangements for the sale under the direction of the defendants, signed the purchase offer form on behalf of the defendants, was to be compensated by them for his work, and accepted the downpayment. A principal may not repudiate an agency which he himself has led others to believe exists. *Barnard & Co. v. County of Sangamon* (1901), 190 Ill. 116, 60 N.E. 109.

In short, the contract was made on the fall of the hammer, its essential terms were clear, and it was accepted by an authorized agent of the sellers. The trial court was correct in awarding specific performance.

Two further contentions of defendants merit short mention. First, they argue that plaintiffs have abandoned the contract and the trial court's finding in this regard, that they had not, is contrary to the manifest weight of the evidence. We do not agree. The source of all the difficulty was the attempt by defendants to substitute a new contract for that made at the auction. Such action would be sufficient to excuse plaintiffs if they so desired. They have not so indicated, but on the contrary stand ready to

perform under the terms of the auction agreement. Defendants' contention has no merit.

■■ Defendants' final argument relates to the Statute of Frauds. They cite the familiar rule that partial payment without more is insufficient to take the case out from under the statute. However, equity will not permit one to take advantage of his own wrong. Defendants' actions described above made further performance by plaintiffs impossible. Furthermore, when one authorizes another to make a parol contract for him, he cannot insist on the Statute of Frauds as a defense. *Doty v. Wilder* (1854), 15 Ill. 407.

Here the purchase offer might be considered a sufficient memorandum to satisfy the statute except that it omits the alternative method of payment, *i.e.*, 40 equal quarterly payments, which must be proved by parol. However, we need not deal with such a problem since Henke had authority to make such a contract. *Doty*.

The order of the circuit court of Macoupin County directing specific performance by the defendants is affirmed.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.