UNITED STATES of America,
Plaintiff–Appellee,

v.

Amos D. DAVENPORT, Jr. and Norma L. Davenport, Defendants–Appellants.

No. 96–1299.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1996.

Decided Feb. 11, 1997.

Gary R. Allen, David I. Pincus, Annette M. Wietecha (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, Douglas W. Snoeyenbos, Department of Justice, Tax Division, Washington, DC, Thomas P. Walsh, Samuel D. Brooks, Office of the United States Attorney, Civil Division, Chicago, IL, for Plaintiff–Appellee.

Andrew B. Spiegel (argued), Wheaton, IL, for Defendants–Appellants.

Before CUMMINGS, ESCHBACH, and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

From 1980–1987, Amos Davenport chose not to file federal income tax returns. Although the transgression was his alone, the consequences extended to his wife, Norma Davenport, when the district court ordered the sale of the Davenports' marital residence to satisfy the federal tax liens that had allegedly attached to the property. The Davenports argue for reversal of the district court's order on the grounds that the sale of their residence violates Illinois homestead law, the Illinois tenancy by the entirety statute, and Internal Revenue Service procedural regulations. Although we sympathize with Norma Davenport's unenviable position, the law requires affirmance for the reasons below.

## I. BACKGROUND

The Davenports have owned their residence at 443 Luella, Calumet City, Illinois (the "marital residence") since April 2, 1955. In 1989, the tax man came knocking: the United States assessed taxes and penalties totalling $168,429.26 for Amos' failure to pay federal income taxes from 1980–1987. Notices of assessments and demands for payment dated December 11, 1989, were sent to Mr. Davenport, but the demands were ignored. Finally, on August 16, 1994, the United States initiated this action in district court seeking to reduce the assessments to judgment and to foreclose its liens on Amos' interest in the marital residence.

At the time the demands for payment were made, the Davenports owned the marital residence as joint tenants. However, on March 20, 1995 (after commencement of the government's foreclosure suit) the Davenports transferred the property to a tenancy by the entireties under Illinois law, presumably in hopes that the estate would then be impervious to Amos' creditors, including the United States taxing authorities.

On December 12, 1994, in response to the government's motion for summary judgment, the district court issued an order 1) entering judgment in favor of the United States in the amount of $208,003.72,[1] 2) foreclosing the federal tax liens, and 3) ordering the sale of the marital residence in satisfaction of the liens. The court reserved ruling on whether Amos was also liable for fraud penalties for the years 1981–1987. In addition, the court refrained from specifying a specific dollar amount or percentage due Norma Davenport as a portion of the proceeds of the sale.

The Davenports appeal the partial summary judgment order decreeing the sale of the marital residence. We review this order *de novo*, drawing all reasonable inferences in the non-movant's favor. *Hoornstra v. United States*, 969 F.2d 530, 532 (7th Cir.1992).

## II. JURISDICTION

■■■■ As a threshold matter, we must determine whether the district court's order is reviewable at this juncture. Although appellants' brief relies on § 1291 jurisdiction, the government correctly discerns that the December 12 order did not dispose of all claims against all parties. When questioned at oral argument, the parties finally agreed that jurisdiction existed under the finality doctrine enunciated in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848).[2] Despite the parties' ultimate agreement, however, we are obliged to independently confirm the basis of our appellate jurisdiction. See *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977); *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir.1993).

The courts of appeal have jurisdiction over "all final decisions of the district courts of the

---

1. Although the government initially asked for $168,429.46, it later reduced its demand to $131,431.41 plus interest on the basis that it was not seeking summary judgment on the fraud penalties for 1981–1987. Including the accrued interest through February 22, 1995, the total amount requested (and subsequently ordered due by the district court) was $208,003.72.

2. After arguing both for and against our jurisdiction at oral argument, the Davenports ultimately agreed with the government's jurisdictional analysis under *Forgay*.

United States ... except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. The government correctly points out that, under conventional doctrine, the district court's order was not a final decision because it did not dispose of all claims against all parties. Specifically, the court left unresolved the issues of additional fraud penalties for 1981–1987 and Norma Davenport's apportioned share of the judicial sale proceeds.

Nevertheless, we take jurisdiction over this appeal under the finality doctrine first announced in *Forgay v. Conrad:*

> [W]hen the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold ... and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent.

*Forgay,* 47 U.S. (6 How.) at 204. The doctrine has been judicially shaped to allow the immediate review of orders directing delivery of property where such an order would subject the losing party to irreparable harm. We have repeatedly recognized the vitality of the Forgay finality doctrine, see, e.g., *National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705 (7th Cir.1994); *Construction Indus. Retirement Fund of Rockford v. Kasper Trucking, Inc.,* 10 F.3d 465 (7th Cir.1993), but have been careful to restrict the doctrine's application to instances that pose clearly irreparable harm. See *ODC Communications Corp. v. Wenruth Investments,* 826 F.2d 509 (7th Cir.1987). Here, the possibility of irreparable harm is plain. The order entered by the district court directs the immediate sale of a unique parcel of land, appellants' marital residence. The bona fide purchaser of the residence at a judicial sale would be under no obligation to later return title to the Davenports should the district court's order be ruled error. The injury occasioned by an erroneous sale of the Dav-

enports' property could be remedied neither by the prior posting of a bond nor by a later award of damages, because the Davenports' interests lie not only in the economic value of the house, but in the specific loss of their marital residence. There can be no questioning the possibility of irreparable harm in this instance. Under these circumstances, the district court's foreclosure and sale order is a final decision subject to our present review.[3]

### III. FORCED SALE OF THE MARITAL RESIDENCE

Having asserted jurisdiction, we are left with the question of whether the district court's order directing the sale of the Davenports' marital residence was proper. The appellants assert that the sale of the property to satisfy the tax lien of only one spouse violates both the Illinois tenancy by the entireties statute and Illinois homestead law.

As support, however, the Davenports cite cases which merely recite the black letter proposition that creditors of only one spouse cannot attach a lien to property held in a tenancy by the entirety. Their brief thus muddles the two distinct legal questions involved in this case: 1) whether the tax lien properly attached to the marital residence, and 2) whether, if the lien did attach, the district court's sale order was proper.

To answer the first question, we must know whether Amos Davenport had "property" to which the lien could attach. *Hoornstra v. United States,* 969 F.2d 530, 532 (7th Cir.1992). State law determines what interest a taxpayer has in property. *United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *United States v. Denlinger,* 982 F.2d 233, 235 (7th Cir.1992). Here, the Davenports argue that the sale was improper because, under Illinois law, a creditor of one spouse cannot attach a lien to property held in an entireties estate because neither spouse has a separate,

---

**3.** Although we learned at oral argument that the property has already been auctioned at a judicial sale, the sale has not mooted the issue. In Illinois, because of the necessity of court supervision over judicial sales, a court must confirm the sale before the high bid can be accepted. *Well v.*

*Schoeneweis,* 101 Ill.App.3d 254, 56 Ill.Dec. 797, 800, 427 N.E.2d 1343, 1346 (1981). Before confirmation, the high bid operates as a mere offer to buy. As this opinion goes to print, neither party has advised this court of judicial confirmation of the sale.

distinguishable interest in that property. While we have no quarrel with this rule of law, its lesson is irrelevant here because the federal tax lien arose before the Davenports transferred the property from a joint tenancy into an entireties estate.

Under I.R.C. § 6321, "if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to that person." This lien attaches at the time of the assessment. I.R.C. § 6322. In this case, the government gave notice of the assessments and made demands for payment as required by I.R.C. § 6303 on December 11, 1989.[4] At that time, the Davenports held the property as joint tenants, not as tenants by the entirety. As a joint tenant, Amos clearly had a defined, separable interest in property to which the federal lien could attach. Furthermore, the Davenports' subsequent transfer of the property into a tenancy by the entirety does not disturb the lien's attachment because "it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*...." *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) (quoting *Burton v. Smith*, 38 U.S. (13 Pet.) 464, 483, 10 L.Ed. 248 (1839)) (internal quotations omitted).

 Having found that the federal lien properly attached, the only question left for our review is whether the marital residence, now held as an entireties estate, can be sold by the government to satisfy the federal tax obligation of only one spouse. The Davenports insist it cannot, relying in error on *E.J. McKernan Co. v. Gregory*, 268 Ill.App.3d 383, 205 Ill.Dec. 763, 643 N.E.2d 1370 (1994).

In *McKernan*, the plaintiff corporation won a civil judgment against defendant. After the judgment, and for the express purpose of making his property unreachable to satisfy the judgment, Gregory transferred his marital residence into a tenancy by the entirety under Illinois law. When McKernan Co. then moved the court to force the sale of Gregory's residence to satisfy the judgment, the court refused. Once again, the Davenports confuse the issues of whether attachment occurred and whether properly attached entireties property can be sold. *McKernan* does not aid the Davenports because the defendant there, unlike the Davenports, transferred the property into a tenancy by the entirety before the levy could attach, not after. Thus, in holding that the sale violated the Illinois entireties statute, the *McKernan* court merely recognized the impropriety of selling property to satisfy a lien that never properly attached. *Id.* at 768, 643 N.E.2d at 1375.

The Davenports also claim that the language of the Tenancy by the Entireties statute prohibits sale. This statute provides that "any real property ... held in tenancy by the entirety shall not be liable to be sold ... against only one of the tenants." 735 Ill. Comp.Stat. 5/12–112. In response, the government points to the following language in the tax code allowing sale:

(a) In any case where there has been a refusal or neglect to pay any tax ... the Attorney General or his delegate ... may direct a civil action to be filed in a district court of the United States to enforce the lien....

(c) *The court ... in all cases where a claim or interest of the United States therein is established may decree a sale of such property ... and a distribution of the*

---

4. The appellants' third argument, that the IRS regulations were not followed in the assessment and demand process, deserves little comment. Their bald allegations that the assessments were not signed by a duly authorized representative are insufficient to defeat summary judgment, and ring as hollow as their earlier argument to the district court for dismissal on the ground that the "United States" as a party was too undefined to bring litigation. Likewise, the appellants' argument that they received insufficient notice of assessments is unsupported and insufficient to

defeat summary judgment on this issue. The government introduced into evidence Certificates of Assessments and Payments for each of the years in question bearing the stamp, "first notice" and the date of December 11, 1989. Certificates of Assessments are presumptive proof that the Certificates were made in accordance with I.R.C. § 6203 and the accompanying regulations, and cause the burden to shift to the plaintiff to overcome this presumption. See *Hefti v. I.R.S.*, 8 F.3d 1169, 1172–73 (7th Cir.1993). The Davenports have not met this burden.

proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

I.R.C. § 7403(a), (c) (emphasis added). On its face, § 7403 grants no exemption to sale where an innocent party holds an interest in the subject property. Our path in the face of explicit contradiction between the two statutes is of course lit by the Supremacy Clause. We need not speculate on the textual conflict, however, in light of the Supreme Court's broad and binding interpretation of § 7403 announced in *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

In *Rodgers,* the federal government filed suit to reduce its income tax assessments against Mr. Rodgers to judgment and to foreclose its liens against the Rodgers' marital residence. Mrs. Rodgers objected to the sale under Article 16 of the Texas constitution, which provides that homestead property "is hereby protected from forced sale, for the payment of all debts," and that "no mortgage, trust deed, or other lien on the homestead shall ever be valid [against the homestead]." TEX.CONST., Art. 16, § 50. Both the district and appellate courts agreed with Mrs. Rodgers, holding that the federal tax liens could not displace her state-created homestead rights. The Supreme Court reversed, holding that although the non-delinquent third-party interest holder must be compensated for her interest, the Supremacy Clause prevents the use of a state-created interest to block a forced sale under § 7403. In so holding, the Court found that the language of § 7403, which allows the sale of the property "in all cases," was absolute on its face:

[W]e must read [sec. 7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any "claim or interest" in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution.

*Rodgers,* 461 U.S. at 693–94, 103 S.Ct. at 2142.[5] Any language from Illinois entireties or homestead law that limits or prohibits sale constitutes a state-created limitation on forced sale, which conflicts with the textually unfettered sale power in § 7403. State-created limitations have no force to except federal law, even when an innocent third-party's rights are at issue: "the Supremacy Clause ... is as potent in its application to innocent bystanders as in its application to delinquent debtors." *Id.* at 701, 103 S.Ct. at 2146–47. *Rodgers* thus forecloses the Davenports' arguments that the district court's sale decree violates Illinois property laws which, in contradiction to § 7403, purport to prohibit sale of the Davenports' marital residence.

■ Although the *Rodgers* Court's interpretation of § 7403 granted a district court the power to decree the sale of property regardless of an innocent third-party's state-created rights, the Court did not read it to require use of that power in all circumstances. Noting that forced sale may at times cause undue hardship to the third party, the Court found that district courts retain limited power to refuse to order a sale allowed under § 7403. The Court then enunciated four factors that a court should consider in deciding not to exercise its power to decree the sale.[6] In their final futile attempt to block sale, the Davenports assign legal error to the district court's failure to consider these factors.

---

5. The district court's December 12 order left unresolved the issue of how the sale proceeds would be distributed. We fully expect that the district court will, in apportioning the proceeds, compensate Norma Davenport for her interest in the marital residence as *Rodgers* directs.

6. The factors are: 1) the extent to which a sale only of the delinquent taxpayer's partial interest would prejudice the government's financial interests; 2) whether the third-party interest holder in

the property has a reasonable expectation that her property would not be subject to forced sale by the delinquent taxpayer or his creditors; 3) the extent of prejudice to the third-party interest holder in terms of relocation costs and in practical undercompensation; and 4) the relative character and value of the liable and nonliable interests in the property. See *Rodgers,* 461 U.S. at 710–11, 103 S.Ct. at 2151–52.

This argument evidences a basic misunderstanding about the role of the *Rodgers* factors.[7] Application of these factors is not prerequisite to a district court's power to decree a sale under § 7403. Instead, the factors serve to limit the district court's equitable discretion *not* to sell, and to provide a framework under which it must justify its refusal to order a sale under § 7403. Consideration of these undue hardship factors is thus a matter of judicial grace, not entitlement. In fact, the *Rodgers* Court warned that a district court's discretionary power to refuse a sale order in light of the clear language in § 7403 is very limited: "To say that district courts need not always go ahead with a forced sale authorized by § 7403 is not to say that they have unbridled discretion [to do so]," *id.* at 709, 103 S.Ct. at 2151, "[w]e do emphasize ... that the limited discretion [not to decree sale] accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711, 103 S.Ct. at 2152.

Here, the district court used its undisputable power granted in § 7403 to order the sale of the marital residence, and chose not to exercise its limited equitable power to except the Davenports. We need not and will not upset that discretionary decision.

The district court is AFFIRMED.

---

**7.** In their brief, the Davenports state: "The *Rodgers* court noted that courts did not have unbridled discretion whether or not to go ahead with a forced sale." This is an incorrect reading of *Rodgers.* The *Rodgers* Court did not limit the discretion of a court to *proceed* with a sale, but to refuse to *proceed* with a sale given the absolute language of § 7403.