**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 30, 2004[*]
Decided March 23, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| Nos. 03-3471 & 03-4192 | |
| | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| CONTIMORTGAGE CORPORATION, *Plaintiff-Appellee,* | |
| and, | No. 00 C 3756 |
| TIM BIASIELLO and JAMES BYRNE, *Intervening Appellees,* | Charles R. Norgle, Sr., *Judge.* |
| v. | |
| DEMETRIS ANGLEZIS, *Defendant-Appellant.* | |

**O R D E R**

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeals are submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

These appeals arise from an action to foreclose a mortgage. By the time these appeals were filed, however, the mortgagor, Mr. Demetris Anglezis, had already unsuccessfully appealed the foreclosure and sale of his property, which resulted in full payment of the debt to his mortgagee's assignee, Contimortgage Corporation. The appeals now before us were taken from two orders partially distributing the surplus from that sale--one to the mortgagor's former lawyer, Mr. Tim Biasiello, and the other to the third-party buyer, Mr. James Byrne. Now, Mr. Anglezis, who represents himself, argues that we must reverse the partial distribution orders. Additionally, despite his prior unsuccessful appeals, he asks us to set aside the foreclosure and sale.

When we first examined the briefs and the record, we were troubled by several unanswered questions regarding appellate and subject matter jurisdiction. Appellate jurisdiction concerned us primarily because the distribution of the surplus was only partial, settling the rights of some, but not all, parties. We were also concerned that the order distributing proceeds to the third-party buyer, Mr. Byrne, may have rendered the confirmation of sale non-final by resetting the sale price. In that event, the confirmation of sale would have become final only upon disbursement of funds, making uncertain whether we have jurisdiction to consider the appellant's arguments about the foreclosure and sale. We were also concerned about our subject matter jurisdiction because the third-party buyer had intervened without asserting any basis for the court's jurisdiction. We ordered a limited remand to answer our questions; we directed that the district court explain what action remains to be taken with regards to the surplus, as well as identify the jurisdictional basis for Mr. Byrne's intervention.

The district court acted on that limited remand, informing us that it had distributed the last of the surplus to Mr. Anglezis and had accepted briefing on the court's subject matter jurisdiction over Mr. Byrne's claims. Regrettably, the court drew no conclusions from Mr. Byrne's jurisdictional briefs; it simply referred us to them. Moreover, although the limited remand order directed all parties to brief the jurisdictional issues upon the limited remand's return to this court, only Mr. Anglezis timely filed his brief. One intervenor, Mr. Biasiello, filed what purports to be a jurisdictional memorandum, but it was filed in an untimely fashion and contains neither argument nor citation to authority.

We conclude that we have appellate jurisdiction over the orders of partial disbursement, but not the foreclosure and sale. Subject matter jurisdiction over Mr. Byrne's intervention is lacking, but jurisdiction over Mr. Biasiellos's lien exists. Therefore, only the appeal concerning his lien is properly before us on the merits; however, Mr. Anglezis raises no argument warranting reversal. We affirm the disbursement to Mr. Biasiello, and reverse and remand for lack of subject matter jurisdiction the order disbursing money to Mr. Byrne.

**I**

**BACKGROUND**

**A. Proceedings in the District Court**

The case began when Mr. Anglezis defaulted on his loan. Owing to that default, Contimortgage filed a complaint on June 21, 2000, seeking foreclosure and invoking the district court's diversity jurisdiction. *See* 28 U.S.C. § 1332.[1] Mr. Anglezis failed to appear; Contimortgage was awarded a default judgment of foreclosure on March 15, 2001. Mr. Anglezis appealed that judgment, but failed to prosecute his appeal (Case No. 01-2552); that appeal was dismissed in March 2002. Sale was set for October 2002. Mr. Anglezis then unsuccessfully sought a temporary restraining order from the district court to prevent the sale. He again appealed (Case No. 02-3705).

Meanwhile, the property was sold to Mr. Byrne. The sale was made subject to general taxes. On December 6, 2002, the district court entered an order confirming the sale, awarding possession to Mr. Byrne and setting the surplus at about $70,000. The court stayed that order. On December 27, 2002, Mr. Anglezis filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure to vacate the default judgment. On December 30, 2002, Mr. Byrne moved to intervene and to obtain compensation for then unpaid property taxes from the surplus. His motion did not state the jurisdictional or substantive basis for his intervention, and the district court asked for none. With a single order dated December 30, 2002, the court denied Mr. Anglezis' motion, lifted its stay of the order confirming the sale and permitted Mr. Byrne to intervene to pursue his claim. On its docket, the court aligned Mr. Byrne as a plaintiff.

Mr. Anglezis appealed again (Case No. 03-1229), asking us to set aside the orders of foreclosure and sale. We consolidated this appeal and his pending appeal (Case No. 02-3705). Although Mr. Anglezis sought a stay in both the district court and in this court, he did not prevail on these requests. Therefore, on August 13, 2003, we dismissed the appeals as moot, holding that, under *Duncan v. Farm Credit Bank of St. Louis*, 940 F.2d 1099 (7th Cir. 1991), no relief could be granted because the property already had been sold.

---

[1] According to Contimortgage's complaint, Contimortgage is a Delaware Corporation with its principal place of business in Delaware. Mr. Anglezis is a citizen of Illinois. The amount in controversy was the unpaid principal balance of about $171,000 on the defaulted loan.

Complicating matters, Mr. Anglezis' mother continued to live in the house after the sale. Three months after the district court lifted the stay in March 2003, Mr. Byrne moved to have an order of possession entered against Mr. Anglezis' mother. For reasons unexplained, Mr. Byrne withdrew his motion for possession the next month; there is no indication that Mr. Anglezis' mother actually left the premises.

After dismissal of Mr. Anglezis' appeals, a dispute arose over the distribution of the approximately $70,000 surplus. Mr. Anglezis claimed it as his own, but two others also claimed a portion. The first of the claimants, Mr. Biasiello, had served very briefly as Mr. Anglezis' lawyer. Mr. Biasiello began representing Mr. Anglezis midway through the foreclosure proceedings--more precisely, after the entry of default and while the order confirming sale was still stayed by the district court. Mr. Biasiello moved to withdraw because, he contended, his relationship with Mr. Anglezis had become impossible. (He was one of several lawyers to do so.) Relying on his contract with Mr. Anglezis and his hourly charges, Mr. Biasiello claimed a lien for $20,000 on the proceeds of the sale. The district court on April 18, 2003, referred the matter to a magistrate judge, who recommended disbursing that amount to Mr. Biasiello and permitting withdrawal. Mr. Anglezis, who failed to appear at the hearing before the magistrate judge, objected; the district court adopted the magistrate judge's recommendation over Mr. Anglezis' objection on September 10, 2003. Acting *pro se*, Mr. Anglezis filed a notice of appeal on September 17, 2003 (Case No. 03-3471).

The second person who claimed a portion of the surplus was the buyer, Mr. Byrne. Mr. Byrne first sought a disbursement to pay property taxes that came due before the sale. As noted above, he did not explain why he believed he was entitled to payment, nor did he attempt to justify the court's authority to grant such relief. The district court originally referred this matter to the magistrate judge, who, on June 18, 2003, recommended denying Mr. Byrne's motion. Mr. Byrne reasserted his claim to the surplus on October 15, 2003 while appeal No. 03-3471 was pending, this time seeking $9,000 to compensate him for Mr. Anglezis' mother's continued occupancy of the property. He also claimed approximately $9,000 for the property taxes mentioned above, which he claimed to have paid since the original rejection of his motion. On November 10, 2003, the district court granted Mr. Byrne's motion and ordered payment, stating that taxes were for the period before the sale. Mr. Anglezis, again acting *pro se*, filed a notice of appeal on December 9, 2003 (Case No. 03-4192).

Meanwhile, the Special Commissioner held a remainder of about $32,000 in proceeds. The court ordered the Commissioner to issue a report on what to do with this remainder--how much should be paid and to whom. The Commissioner did not write this report; at least it is not to be found in the record. Although Mr. Anglezis

requested payment, the district court denied his motion as "moot" in July 2004 because of his pending appeal.

## B.  Limited Remand

When these appeals first came before us, as we note above, we were concerned about our appellate jurisdiction, given that $32,000 of the proceeds remained undistributed and the rights to it were undecided. We also were troubled because Mr. Byrne's intervention for reimbursement for paid property taxes may have undone the sale price, and therefore, the finality of the confirmation of sale. In that case, the confirmation became final only upon the disbursement from which Mr. Anglezis appealed, raising questions as to whether his arguments regarding the confirmation of sale and foreclosure were properly before us. Subject matter jurisdiction was also a problem because Mr. Byrne, a non-diverse party, intervened as a plaintiff in this diversity action but raised only non-federal claims without offering a basis for the district court's jurisdiction over them. A similar problem plagued Mr. Biasiello's claim, but the magistrate judge suggested that the district court had supplemental jurisdiction over his request for a lawyer's lien. *See Clarion Corp. v. Am. Home Prods. Corp.*, 464 F.2d 444, 445 (7th Cir. 1972) (per curiam).

To clarify matters, we ordered a limited remand, requesting that the district court explain what action remained to be taken with respect to the $32,000 surplus, as well as to explain the substantive and jurisdictional bases for Mr. Byrne's intervention. The district court responded by releasing the last of the $32,000 surplus to Mr. Anglezis and accepting jurisdictional briefing from Mr. Byrne.

## II

## ANALYSIS

## A.  Appellate Jurisdiction

### 1.  The Orders of Disbursement

It has been long established that there may be multiple final orders in an action to foreclose a mortgage. *See Sage v. Cent. R.R. Co. of Iowa*, 96 U.S. 712, 714 (1877). As relevant here, typically the first final order is the order confirming sale, which establishes "who gets the property, at what price, and what deficiency judgment (if any) will be entered against the [mortgagor]," and thereby ends the underlying dispute between the mortgagor and mortgagee. *Mortgage Elec. Registration Sys., Inc. v. Estrella*, 390 F.3d 522, 523–24 (7th Cir. 2004). Apart from

serving as the means to resolve the underlying dispute over the debt, an order confirming sale is final and appealable for another, practical reason: delay could cause the mortgagor to suffer irreparable harm, stemming from the sale of the mortgaged property. *See United States v. Davenport*, 106 F.3d 1333, 1334-35 (7th Cir. 1997). Still, even after the order confirming sale becomes final, the distribution of proceeds sometimes remains. Because the distribution process cannot undo the confirmed sale, it is a bit like a second leg of litigation. This stage of proceedings will not become final until the court issues an order disposing "of all claims against all parties" and determining the parties' respective rights to the surplus. *See id.* at 1334-35 (noting that distribution of proceeds from a tax sale was not final because it left the property owner's rights undetermined).

Here, at the time this appeal was filed, the rights to the $32,000 surplus were still undecided. Although the prior orders of disbursement (Case Nos. 03-3471 and 03-4192) settled the respective rights of Mr. Biasiello and Mr. Byrne (Contimortgage received its share earlier), these orders did not determine whether Mr. Anglezis also had a right to surplus; therefore, the disbursement orders were not final at the time of appeal. *See id.* Nor was there a basis for immediate appeal: There was neither a certification under Fed. R. Civ. P. 54(b), nor a discernable risk of irreparable harm under the practical finality or collateral order doctrines. *See Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 126 (7th Cir. 1997); *People Who Care v. Rockford Bd. of Educ. Dist. No. 205*, 921 F.2d 132, 134–35 (7th Cir. 1991).

Nevertheless, the district court now has disposed of all remaining claims by disbursing the rest of the surplus, resolving our concerns. Under 4(a)(2) of the Federal Rules of Civil Procedure, premature notice of appeal relates forward to entry of final judgment, when the notice was filed from an order that would have been appealable had a judgment been entered immediately afterward. *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 276 (1991).[2] Specifically, we have repeatedly held that, "once a decision is announced, a premature notice of appeal lingers until the final judgment is entered." *See Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 700-01 (7th Cir. 2004) (holding that the notice of appeal, filed after the district court entered judgment as to one defendant but before the court dismissed the claims against the other defendants, would have become effective when those defendants were later dismissed). The orders in this case had,

---

[2] Several of our sister circuits have adopted similar rules. *See Outlaw v. Airtech Air Conditioning & Heating, Inc.*, 412 F.3d 156, 158 (D.C. Cir. 2005); *In re Bryson*, 406 F.3d 284, 287–89 (4th Cir. 2005); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 539 n.1 (5th Cir. 2005); *Good v. Ohio Edison Co.*, 104 F.3d 93, 95-96 (6th Cir. 1997); *Clausen v. Sea-3, Inc.*, 21 F.3d 1181, 1186-87 (1st Cir. 1994).

prior to appeal, disposed of the claims by Mr. Biasiello[3] and Mr. Byrne; when the district court, on remand, finally determined the rights of Mr. Anglezis to the surplus, its distribution order became final. Under our precedent, the appellant's notice of appeal was merely premature. We therefore have appellate jurisdiction to review the district court's partial disbursement orders. *See id.*

## 2. The Foreclosure and Sale

We were also concerned about finality because Mr. Byrne's intervention seeking back taxes was, in a sense, an attempt to renegotiate the sale price-- perhaps undoing the sale's finality. If so, then the scope of the appeal might also include the confirmation of sale itself. *Cf. Mortgage Elec. Registration Sys.*, 390 F.3d at 523–24 (emphasis added) (holding that a foreclosure action becomes final only when the order confirming sale establishes "who gets the property, *at what price*, and what deficiency judgment (if any) will be entered against the [mortgagor]"). Such a situation raises, in turn, the possibility that the foreclosure action became final only when the district court ordered a disbursement of surplus to Mr. Byrne for back taxes, because it was only at that point that the court set the final sale price.

The limited remand resolved these concerns. First, although the payment for back taxes could be seen as a refund, Mr. Byrne did not seek to undo the sale. Payment to him therefore would not reverse the transfer of the property that resulted in a risk of irreparable harm, justifying immediate appeal. *See Sage*, 96 U.S. at 714; *Davenport*, 106 F.3d at 1334-35. Second, to the extent that Mr. Byrne's intervention reset the sale price, it did not affect the amount paid to Contimortgage because, even after the refund, the sale price exceeded the debt. Since the whole purpose of the foreclosure action is to secure that debt for the mortgagee, the language in *Mortgage Electronic Registration Systems*, 390 F.3d at 523-24, regarding the sale price should not be taken to undermine the finality of the underlying dispute between Contimortgage and Mr. Anglezis. Third, as we are about to explain, the district court had no subject matter jurisdiction over Mr. Byrne's claims, so as a matter of common sense, his intervention was void and should not undo the finality of the underlying foreclosure.

---

[3] Because Mr. Biasiello simultaneously withdrew, there was no chance that he would accrue any other fees, and the order to pay him cannot be seen as interim or inherently nonfinal. *See Estate of Drayton v. Nelson*, 53 F.3d 165, 167 (7th Cir. 1994).

## B. Subject Matter Jurisdiction

### 1. The Disbursement to Mr. Byrne

Turning to subject matter jurisdiction, we begin by discussing the district court's jurisdiction over Mr. Byrne's claim. As an intervenor, Mr. Byrne bore the burden to establish the court's subject matter jurisdiction over his claims. *See TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 633 (7th Cir. 2003). Nevertheless, he offered no basis for subject matter jurisdiction, and the district court did not ask for any. On appeal, he explained that he was entitled to payments for property taxes he had previously paid, as well as for "use and occupancy" of the property-- both because Mr. Anglezis' mother continued to live on the property and because Mr. Anglezis unnecessarily drew out the litigation. On limited remand, after the district court asked him what the substantive and jurisdictional bases for his claim were, Mr. Byrne asserted that he intervened under Fed. R. Civ. P. 24(b) and that his intervention was proper because his "interest in this litigation does not affect the original diversity of the parties herein, since his interest comes into being through the enforcement of prior orders of this Court."

Unfortunately for Mr. Byrne, however, his assertions simply fail to establish federal jurisdiction. Because Mr. Byrne is a non-diverse party and intervened as a plaintiff under Federal Rule of Civil Procedure 24(b) in a case in which the only basis for jurisdiction was diversity, his action must be dismissed. *See* 28 U.S.C. § 1367(b); *TIG Ins.*, 334 F.3d at 634. Mr. Byrne concedes that his intervention was permissive rather than as of right. Even construing supplementary jurisdiction broadly, permissive intervention requires an independent basis for jurisdiction, which is lacking here. *See Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997); *Am. Nat'l Bank & Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 583 (7th Cir. 1984); Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1917 (1986 & Supp. 2005).

This leaves the question of the legitimacy of the district court's order, distributing funds to Mr. Byrne. The district court had no subject matter jurisdiction to enter that order. We therefore direct the district court to ensure the money's return to Mr. Anglezis. *See Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891) ("[T]he power is inherent in every court, while the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and in which it, therefore, acted erroneously, and to restore, so far as possible, the parties to their former position."); *see also In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (ordering restitution of funds paid by bankruptcy court lacking subject matter jurisdiction); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985) (affirming order of restitution for void judgment under Fed. R. Civ. P. 60(b)(4)).

### 2. The Disbursement to Mr. Biasiello

As for subject matter jurisdiction over Mr. Biasiello's claim, the magistrate judge noted that a federal court has supplemental jurisdiction over a non-diverse attorney's claim for fees in a diversity action if the attorney asserts a lien on a fund, which is within the district court's jurisdiction. *See Clarion Corp.*, 464 F.2d at 445. Of course, Mr. Biasiello's claim is based on state law, and jurisdiction over the dispute might be lacking if the court had relinquished jurisdiction over the fund and the underlying case. *See Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 577 (7th Cir. 2005). Nevertheless, since Mr. Biasiello's lien arose from services provided exclusively in the underlying litigation, supplemental jurisdiction was proper over the lien. *See Abbott Labs. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002); *see also Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999); *Kalyawongsa v. Moffett*, 105 F.3d 283, 286–288 (6th Cir. 1997).

## C. The Merits

As for the merits, only the order disbursing payment to Mr. Biasiello is properly before us on appeal. Mr. Anglezis' arguments do not warrant reversal of that disbursement. Mr. Anglezis argues that the court erred because Mr. Biasiello failed to provide proper notice to Mr. Anglezis, as required to perfect his attorney's lien under 770 Ill. Comp. Stat. 5/0.01, 5/1, and because Mr. Anglezis never agreed to pay Mr. Biasiello's fees. The argument regarding notice is without merit. The magistrate judge did not decide that Mr. Biasiello held a statutory attorney's lien. Instead, he ruled that Mr. Biasiello held an enforceable equitable lien, which requires only that there be a debt or duty and a *res* to which that obligation attaches. *See In re Brass Kettle Rest., Inc.*, 790 F.2d 574, 575-76 (7th Cir. 1986). Both criteria were satisfied; the contract secured Mr. Biasiello's fee by requiring that it be paid only from proceeds from the loan on the property or from a disbursement from the forced sale of that property. As for the second point, Mr. Anglezis' argument that he did not agree to pay fees similarly fails:  he signed a contract, which plainly provides for attorneys' fees. Therefore, we affirm the distribution to Mr. Biasiello.

## Conclusion

For the reasons set forth in this order with regard to Case No. 03-4192, we reverse and remand the order of disbursement to Mr. Byrne with instructions to restore the money to Mr. Anglezis, without prejudice to the merits of Mr. Byrne's state-law claims (whatever those claims or their merits may be). In Case No. 03-

3471, we affirm the order disbursing funds to Mr. Biasiello.  We have no jurisdiction over the orders of foreclosure and sale.  All pending motions are denied.

IT IS SO ORDERED